John Cribbet et al., Appellees, v. Fern Hoffman, Appellant.

Gen. No. 8,693.

248

Opinion filed January 16, 1933.

W. H. Whitaker, for appellant.

U. G. Ward, Robt. I. Pugh and Philip L. Turner, for appellees.

Mr. Justice Shurtleff delivered the opinion of the court.

This was a bill to foreclose a mortgage which was filed to the November Term, 1931, of the circuit court of Shelby county. It prays for a summons and the summons was issued for the defendants Clara M. Fitzwater, Clara M. Fitzwater, executrix of the estate of Charles E. Fitzwater, deceased, Daisy A. Fitzwater, Chester E. Fitzwater, Reber S. Fitzwater, Noble Fitzwater and Fern Hoffman, as requested by the bill. But no summons was asked for and none issued for the defendants J. E. Dazey and the Findlay Grain & Coal Company, judgment creditors.

The defendants Clara M. Fitzwater, Clara M. Fitzwater, executrix, Chester E. Fitzwater, Reber S. Fitzwater, Noble Fitzwater and Fern Hoffman filed answers to the bill and amended bill, but Daisy A. Fitzwater did not file answer and did not enter her appearance.

The bill and amended bill allege that Daisy A. Fitzwater was in possession and held the legal title to the 460 acres of land described in the bill; that Daisy A. Fitzwater was appointed administratrix of the estate of Charles E. Fitzwater, deceased; that after a few years a purported will was found and filed for probate by the widow. This was resisted by Daisy A. Fitzwater, who was never discharged as administratrix of the estate of Charles E. Fitzwater, deceased; that before the filing of the bill to foreclose, a suit was pend-

ing in court on an appeal involving the acts of Daisy A. Fitzwater as such administratrix, which case is now pending in Shelby county for trial.

The bill and amended bill allege that Charles E. Fitzwater was indebted to the First National Bank of Findlay and John Cribbet, and on July 7, 1927, executed a certain promissory note, payable to J. E. Dazey, trustee, and John Cribbet, which note was secured by a mortgage on 460 acres of land, described in the bill; that some years subsequent thereto the First National Bank sold its assets to the First State Bank of Findlay. The bill alleges that the indebtedness of July 7, 1927, consisted of a note of $2,999, signed by Charles E. Fitzwater, payable to the First National Bank; a note of the same date for $4,000, payable to John Cribbet, signed by Charles E. Fitzwater; a note of $3,000, dated July 7, 1927, payable to the First National Bank, signed by Noble Fitzwater; a note of $3,000, dated July 7, 1927, signed by Reber S. Fitzwater, and a note of $3,000, dated July 7, 1927, payable to the First National Bank, signed by Chester E. Fitzwater; that the three notes of $3,000 each were indorsed by Charles E. Fitzwater; that the two notes, one for $434.88 and one for $338.40, constituted the amount of the indebtedness of $16,772.28, for which the mortgage was given by Charles E. Fitzwater and Clara M. Fitzwater to secure the same, but it is admitted that $772.28 was paid with interest, so that the amount claimed of $16,000, plus the interest, is subject to a first mortgage of $46,000 given to the First Trust Joint Stock Land Bank of Chicago.

The bill alleges that after the execution of the mortgage the grantors, on July 27, 1927, executed a deed for all of said land to Daisy A. Fitzwater, subject to the mortgages.

The bill also alleges that Charles E. Fitzwater left him surviving his widow, Clara M. Fitzwater, Daisy A.

Fitzwater and Fern Hoffman, daughters, Chester E., Reber S. and Noble Fitzwater, sons, his only heirs. It alleges that he died testate and that his will was afterwards probated; that all of the defendants mentioned are insolvent; that all of the land was sold for taxes on September 17, 1931; that no part of the real estate has been redeemed from tax sale, and that the rents from the land in 1931 were not sufficient to pay interest on the first mortgage, amounting to $1,495.

The answer of Fern Hoffman, Clara M. Fitzwater, Clara M. Fitzwater, executrix of the estate of Charles E. Fitzwater, deceased, Chester E., Reber S. and Noble Fitzwater, states that the note of $2,999, dated July 7, 1927, has been paid; denies that J. E. Dazey and John Cribbet were lawfully and legally appointed trustees of the First National Bank, but admits that it sold the assets to the First State Bank.

The answer further admits that the Noble Fitzwater and Reber S. Fitzwater notes were accommodation paper given to J. E. Dazey for the purpose of enabling him "to get by the State examiner"; that no money was turned over on the notes to Noble or Reber S. Fitzwater.

The answer sworn to by Reber S. Fitzwater denies that he signed the notes and there is no contradiction to his testimony. On the contrary, it was supported by other witnesses.

The answer of Fern Hoffman et al. states that J. E. Dazey was a self-appointed trustee; that he practiced a fraud upon the depositors of the First State Bank and committed an act that was contrary to public policy by getting Noble and Chester E. Fitzwater to sign notes of $3,000 each when they were insolvent.

The answer admits that J. E. Dazey did secure two sets of notes of $16,772.28 each, and charges that it was presumedly to turn into small notes to John Cribbet and the First National Bank and to keep the large

note of $16,772.28, secured by the mortgage, for himself.

The answer alleges that J. E. Dazey prepared a mortgage to himself as trustee, whereas the defendants wanted to make the mortgage to the First National Bank, to which they owed money; but it was agreed that if the Fitzwaters would make a note to J. E. Dazey, trustee, that would help him to evade paying taxes and that he would in turn give them more time to pay their obligations.

The answer alleges that the First State Bank was not an innocent purchaser; that they knew as much about the condition as did the First National Bank because the same directors in the First National Bank were the directors that took over the assets for the First State Bank.

The answer charges that there is a suit pending in the Shelby county circuit court by Clara M. Fitzwater to compel Daisy A. Fitzwater to convey the land to her, and further that Daisy A. Fitzwater, administratrix, has not yet been removed from acting as such administratrix of the estate of Charles E. Fitzwater, deceased, and has not settled up as such administratrix.

The answer charges that, before the petition to probate the will of Charles E. Fitzwater, deceased, came on for hearing, Daisy A. Fitzwater presented a petition to the county court to sell the personal property of Charles E. Fitzwater at private sale, and that the next day, December 16, 1930, Daisy A. Fitzwater made a pretended sale of the personal property of Charles E. Fitzwater, deceased, to J. E. Dazey; that she made a final report and asked its approval, to which objections were made and allowed and the sale to J. E. Dazey was set aside.

The answer alleges that J. E. Dazey is a lawyer and banker of Findlay and has been for years engaged to marry Daisy A. Fitzwater, and so dominated her that

she refused to deliver up to her mother, Clara M. Fitzwater, the 460 acres of land, for which a suit is now pending in the circuit court of Shelby county.

A decree was entered by the court ordering foreclosure of said mortgage for the full amount claimed to be due upon said notes, and finds that the First State Bank of Findlay, "complainant," was the owner of and entitled to recover the sum of $13,419.90; that complainant John Cribbet was the owner of and entitled to recover the sum of $4,753.67 of the indebtedness; and "it is ordered by the court that Clara M. Fitzwater as executrix of the estate, pay in due course of administration to the complainant herein, twenty days from said date, $18,173.57. And in default of said payment being made, as aforesaid, that the mortgaged premises mentioned in the bill of complaint be sold, or so much thereof as may be sufficient to realize the amount due, including attorney's fees."

Clara M. Fitzwater, executrix of the last will and testament of Charles E. Fitzwater, deceased, has brought the record by appeal to this court for review.

In the original record as sent up it was shown that the summons issued in the court below had never been returned and apparently the court had no jurisdiction over certain of the defendants; however, upon motion of appellees to supply the diminution of the record of the summons returned, taken with the case, we have granted the motion and the record is now complete.

The bill sets out various notes upon which the said Charles Fitzwater had become indebted to the First National Bank of Findlay and Cribbet, one in the sum of $4,000 to Cribbet, three for $3,000 each, given by each one of his three sons to said bank, upon which Charles Fitzwater was a mere indorser, one note of $2,999 and some smaller notes; that without releasing any of said notes a new note was executed in the sum of $16,772.28 covering the total sum of said notes, so

that the complainants held two sets of notes covering the said claimed indebtedness.

We have read all of the evidence and examined the entire record. The proof shows, and it seems to be admitted, that the two notes given by Noble Fitzwater and Reber S. Fitzwater for $3,000 each, were each accommodation paper, merely made to show the bank examiner, and that there was no consideration of any kind for said notes. The proofs show that the two notes, one signed by Reber S. Fitzwater and one by Chester Fitzwater, each for the sum of $3,000, were not signed by either of the purported makers, respectively, but the proofs do show that Daisy A. Fitzwater signed one of them. The Chester Fitzwater note was a blank signature note, merely signed in blank by Chester Fitzwater in 1924 and filled out as to all other matter by some person other than the signer, in 1927. Noble Fitzwater testified that in the fall of 1928 in discussing with Dazey the $13,000 that had been taken off from the farm, Dazey told him that his father's note for $2,999 had been fully paid. Dazey did not contradict this or give any testimony. Daisy Fitzwater denied that she signed Reber S. Fitzwater's name to the note, but she does not undertake to say whose signature it is.

Upon the trial before the chancellor, appellant Clara M. Fitzwater offered to prove: "I make an offer to prove by this witness that immediately following the signing of this note, that Charley Fitzwater and his wife, he being indebted to his wife for about $9,000, wanted to make a deed to her to protect her for this sum of money and she and her husband, Charley Fitzwater, executed a deed to Daisy Fitzwater thereupon to be held by her and conveyed to her mother on request, and I expect to further show that Daisy A. Fitzwater, who was then very much infatuated with J. E. Dazey, allowed this land to sell for taxes and after

she became so infatuated with J. E. Dazey, refused to give up the land and kept all of the rents that she got from the land and allowed this land to sell for taxes for the express purpose and with the threat that if she gave up this land they would foreclose the mortgage and further that Mr. Fitzwater, while she was in California, sent $6,000 to her daughter who was in possession of the land and running it for the purpose of paying the taxes and keeping down the expenses, to also pay the interest.'' The offer was objected to, denied by the court and defendants excepted.

Inasmuch as Daisy A. Fitzwater was, at the time of this trial, administratrix of her father's estate, whose duty it was to protect the estate from attack and defend its best interests, we are of the opinion that the proofs were competent. The proofs showed that she had refused to turn over the administratrix's account to her mother, who had been appointed executrix, and that litigation over her account was pending in court. The purpose of administrators and representatives is to protect estates, not to ravish and destroy them, as the courts have said in many cases. It was error also on the part of the court to order the executrix, who was endeavoring to get possession of the estate, to pay the mortgage debt, and in no manner attempt to exercise jurisdiction over the administratrix who had the estate in her hands.

There are no proofs in this record that the appellees ever advanced any moneys for any of the notes involved in this suit, and in view of the fictitious notes presented and the note paid, it would not have been an abuse of discretion to have required some proof in that line and not depend entirely upon presumptions.

Appellant contends that appellees do not come into a court of equity with clean hands and that a court of justice will not enforce the execution of an illegal con-

tract and will not aid in the division of the profits of an illegal transaction, citing *Goodrich v. Tenney*, 144 Ill. 422, 428.

Doubtless upon another trial much that has crept into this case will be eliminated and the court will more nearly get at the exact rights of the parties.

For the reasons stated, the decree of the circuit court of Shelby county is reversed and the cause remanded for another trial, not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*